# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CHRISTOPHER LOFGREN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 14 C 7869 |
| v. ) | |
| ) | Judge Jorge L. Alonso |
| BRIAN WOJOWSKI, TIMOTHY PERRY, ) | |
| JOSE VASQUEZ, VILLAGE OF NEW ) | |
| LENOX, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Christopher Lofgren, has filed this lawsuit against New Lenox police officers and the Village of New Lenox for violating his civil rights by arresting him without probable cause and conspiring to arrest him without probable cause. This case is before the Court on defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the following reasons, the Court grants the motion.

## BACKGROUND

At approximately 2:00 a.m. in the early morning of October 12, 2013, plaintiff, an off-duty Chicago police officer, rode with his friend Luke Smith to meet plaintiff's girlfriend and another woman at Papa Joe's Restaurant in New Lenox for drinks. (Defs.' LR 56.1(a)(3) Stmt. ¶¶ 6-9, ECF No. 35.) Papa Joe's was closed at that time, but Smith and his family owned the restaurant, so Smith had access to the space after hours. (*Id.*, Ex. A, Pl.'s Dep., at 80:3-82:8.)

Defendant Brian Wojowski, a New Lenox police officer, was on patrol duty in a marked squad car at that time. (Pl.'s LR 56.1(b)(3)(B) Resp., ¶ 9, ECF No. 42.) He saw Smith's car turn into the Papa Joe's parking lot, and, knowing that Papa Joe's was closed at the time, he followed

to investigate. (*Id.* ¶¶ 10-15.) Plaintiff approached Officer Wojowski and, identifying himself as an off-duty Chicago police officer, attempted to explain what was going on. (*Id.* ¶ 20; Defs.' LR 56.1(a)(3) Stmt., Ex. A, at 89:1-20.) Officer Wojowski then asked to speak with Smith, who had already entered the restaurant, and plaintiff went in to retrieve him. (Defs.' LR 56.1(a)(3) Stmt. ¶ 22.) While Smith and Officer Wojowski were speaking on the driver's side of Wojowski's squad car, Timothy Perry, another New Lenox police officer, arrived on the scene and spoke with plaintiff on the passenger side of the car. (*Id.* ¶ 24.)

Officer Wojowski arrested Smith on suspicion of driving under the influence. (*Id.* ¶ 26-27.) After Officer Wojowski left the scene with Smith, Officer Perry remained behind to conduct an inventory search of Smith's car. (*Id.* ¶ 30.) Either during or after the inventory search of the car, Officer Perry noticed on the ground a round blue container with some pills inside it and scattered around it, approximately in the area where plaintiff had been standing earlier when he spoke with Officer Perry, near where Officer Wojowksi's squad car had been parked. (Pl.'s LR 56.1(b)(3)(B) Resp., ¶¶ 32, 35.) Within a few inches of the pills, Officer Perry found a folded paper card, which he identified as an appointment card for the Chicago Police Department Employee Assistance Program ("EAP"). (*Id.* ¶¶ 33-34.)

Officer Perry collected the container, pills, and card and brought them to the New Lenox police station. (*Id.* ¶ 41.) He used a website (www.drugs.com) to identify the pills as controlled narcotics—Adderall, Hydrocodone, and Xanax. (*Id.* ¶ 42.) Officer Perry informed Officer Wojowski that he had recovered the pills, container and card near where Wojowski's squad car had been parked. (*Id.*)

Plaintiff went to the New Lenox police station to bond out Smith. (*Id.* ¶ 29.) Officer Wojowski asked him if he was ever in an EAP program, and plaintiff responded in the

affirmative. (*Id.* ¶ 46.) Officer Wojowski then informed plaintiff that some scheduled narcotics had been found on the ground near where plaintiff was standing. (*Id.* ¶ 47.) Plaintiff told Wojowski, "whatever I have in me, . . . I have a prescription for." (*Id.* ¶ 48.) Wojowski showed plaintiff the container, and plaintiff informed him that it belonged to plaintiff and he had a prescription for whatever was in there. (*Id.* ¶¶ 50-51.) Officer Wojowski asked him what was in the container, and at that point, plaintiff denied that the container was his. (*Id.* ¶¶ 52-53.)

Plaintiff admitted that he was in an EAP program, but he denied that the card was his. (*Id.* ¶ 58.) After Officer Wojowski suggested that the card had a date and time on it and follow-up investigation might reveal that the EAP appointment card belonged to plaintiff, plaintiff responded that the card "might be" his, but denied that the pills and container were his. (*Id.* ¶ 60.)

Officer Wojowski called a Will County Assistant State's Attorney ("ASA") and asked for her advice. (*Id.* ¶ 62.) After speaking with the ASA, Officer Wojowski proceeded with plaintiff's arrest for possession of controlled substances. (*Id.* ¶ 63; Defs.' LR 56.1(a)(3) Stmt., Ex. D.)

Plaintiff later produced to the Will County State's Attorney's Office records showing that he had valid prescriptions for the pills he was charged with possessing, and the State's Attorney's Office decided not to file charges against plaintiff. (Defs.' Resp. to LR 56.1(b)(3)(C) Stmt. ¶ 38, ECF No. 47.)

**DISCUSSION**

In the present motion for summary judgment, defendants claim that there was probable cause for plaintiff's arrest, so his false arrest claim and conspiracy claims must fail.[1]

"Probable cause is an absolute bar to a § 1983 claim for false arrest." *McBride v. Grice*, 576 F.3d 703, 707 (7th Cir. 2009). "A police officer has probable cause to arrest if a reasonable person would believe, based on the facts and circumstances known at the time, that a crime had been committed." *Id.*; *see also Gonzalez v. City of Elgin,* 578 F.3d 526, 537 (7th Cir.2009) ("A police officer has probable cause to arrest a person if, at the time of the arrest, the 'facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.' ") (quoting *Michigan v. DeFillippo,* 443 U.S. 31, 37 (1979)). "Probable cause . . . is an objective test, based upon 'factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *Humphrey v. Staszak,* 148 F.3d 719, 726 (7th Cir. 1998) (quoting *Brinegar v. United States*, 338 U.S. 160, 175 (1949)). If there is no genuine factual dispute as to any of the material facts supporting the probable cause determination, the court can decide on a motion for summary judgment whether an arresting officer had probable cause. *Potts v. City of Lafayette, Ind.*, 121 F.3d 1106, 1112 (7th Cir. 1997).

"Whether an officer is authorized to make an arrest ordinarily depends, in the first instance, on state law. Federal law asks only whether the officers had probable cause to believe that the predicate offense, as the state has defined it, has been committed." *London v. Harris*, No. 09 C 7797, 2011 WL 2683158, at *2 (N.D. Ill. July 11, 2011) (citing *Williams v. Jaglowski,*

---

[1] Plaintiff's complaint also contains a malicious prosecution claim and it names Officer Jose Vasquez as a defendant, but plaintiff has abandoned the malicious prosecution claim and all claims against Officer Vasquez. (*See* Defs.' Mem., at 2 n.1, ECF No. 34.)

269 F.3d 778, 782 (7th Cir. 2001)). Plaintiff was arrested for possession of a controlled substance in violation of 720 ILCS 570/402(c), an offense that requires the State to prove "(1) the identity of the substance at issue, *i.e.,* that it is a controlled substance in the proper amount; and (2) that [the accused] knowingly possessed that substance." *See People v. Besz*, 802 N.E.2d 841, 844 (Ill. App. Ct. 2003). A person may be convicted of "possessing" contraband even in the absence of direct evidence that the contraband was on his person at a particular time:

> [I]t is not necessary for the State to prove actual possession, if constructive possession can be inferred. *People v. Neylon,* 762 N.E.2d 1127 (Ill. App. Ct. 2002). Evidence that a defendant knew drugs were present and exercised control over them establishes constructive possession. *People v. Jones,* 692 N.E.2d 762 (Ill. App. Ct. 1998). Knowledge may be shown by the evidence of conduct from which it may be inferred that the defendant knew the contraband existed in the place where it was found. *People v. Smith,* 681 N.E.2d 80 (Ill. App. Ct. 1997). This evidence, establishing constructive possession, is often entirely circumstantial. *People v. Minniweather,* 703 N.E.2d 912 (Ill. App. Ct. 1998).

*Besz*, 802 N.E.2d at 849 (internal citations altered); *see also People v. Adams*, 641 N.E.2d 514, 519 (Ill. 1994) ("Constructive possession may exist even where an individual is no longer in physical control of the drugs, provided that he once had physical control of the drugs with intent to exercise control in his own behalf, and he has not abandoned them and no other person has obtained possession.") (citing *People v. Fox*, 182 N.E.2d 692, 694 (Ill. 1962)); *United States v. Richardson*, 208 F.3d 626, 632 (7th Cir. 2000) ("Establishing constructive possession requires that the government establish a nexus between the accused and the contraband, in order to distinguish the accused from a mere bystander."); *Gonzalez v. Bala*, No. 12 C 6150, 2015 WL 4763914, at *3 (N.D. Ill. Aug. 12, 2015) ("To prove constructive possession in a case where, as here, multiple parties occupy the same [space], the Officers must demonstrate 'a substantial connection between the [accused] and the contraband itself, not just the [space].'") (quoting *United States v. Lawrence,* 788 F.3d 234, 240 (7th Cir. 2015)).

The evidence shows, and plaintiff admitted at his deposition, that when Officer Wojowski showed plaintiff the pill container, plaintiff responded that the container was his and he had a prescription for whatever was in it. He also admitted that he was in an EAP program. As he explained at his deposition, it was only after he realized that he was the subject of a criminal investigation that he reversed course and denied that the container or pills were his. (Defs.' LR 56.1(a)(3) Stmt., Ex. A, at 134:8-136:13.) He denied that the EAP card was his, but when Officer Wojowski pointed out that follow-up investigation might show that the card was his because it would be easy to check whether he had an appointment scheduled for the date and time shown on the card, plaintiff amended his answer and admitted that the card "might be" his. (*Id.*, Ex. A, at 141:3-12, 142:8-20.) It is well-established that inconsistent answers to questioning may reasonably raise suspicion. *See United States v. Reed*, 443 F.3d 600, 603 (7th Cir. 2006); *People v. Richardson*, 876 N.E.2d 303, 309 (Ill. App. Ct. 2007). A reasonable interpretation of plaintiff's contradictory responses to Officer Wojowski's questions is that plaintiff was being suspiciously "evasive and deceptive." *See Reed*, 443 F.3d at 603.

The officers had seen plaintiff standing in an area near where Officer Perry recovered the drugs. Although many people had likely stood in that parking lot that night, the EAP card recovered with the drugs potentially linked the drugs to plaintiff, who had told the officers that he was a Chicago police officer. When confronted with the drugs and the card, plaintiff suspiciously gave inconsistent responses. He told Officer Wojowski first that the pill container was his, but then denied it. He told Officer Wojowski that, although he was in an EAP program, the card was not his; but then he admitted it "might" have been his. While the recovery of the drugs and an EAP card from an area of a parking lot where plaintiff had been standing would not be enough to give the officers probable cause by itself, the recovery of those items from an area

where plaintiff had been standing, *combined* with his suspicious response when confronted with the items, in which he initially admitted, and then later denied, that the drugs were his, was enough to support a reasonable belief that a crime had been committed.

Plaintiff argues that he truthfully told Officer Wojowski that he had a prescription for the drugs, and that when this fact is added to the equation, it negates probable cause. A reasonable officer, plaintiff contends, would not have simply ignored that reasonable explanation.

In other circumstances, this argument might be persuasive, but the argument is misplaced in this case because of plaintiff's suspicious behavior in giving inconsistent responses to questioning about the drugs. In considering defendants' motion for summary judgment, this Court is required to view all the facts in the light most favorable to plaintiff, but the officers were not required to do so on the morning of October 12, 2013. *See Bridewell v. Eberle*, 730 F.3d 672, 676 (7th Cir. 2013). To determine whether an officer had probable cause, a court simply asks whether the officer had subjective knowledge of facts that would give a reasonable officer cause to believe that a crime had probably been committed. The officer need not assume that everything a suspect tells him is true. If he reasonably believes, in the totality of the circumstances, that criminal activity is afoot, despite a suspect's protestations to the contrary, he is entitled to arrest the suspect and allow a court to sort out later whether or not the suspect in fact committed a crime. *See Hernandez v. Sheahan*, 455 F.3d 772, 775 (7th Cir. 2006).

When Officer Wojowski confronted plaintiff with the drugs and the card, it is true that plaintiff initially responded by telling Officer Wojowski that he had a prescription for whatever was in the container. But "after [he] had a second or two to understand it was not just a friendly conversation, that it was turning into [a] criminal [investigation]" (Defs.' LR 56.1(a)(3) Stmt., Ex. A, at 134:9-111), plaintiff denied that the drugs were his at all. He did not persist with his

7

claim that he had prescriptions for the drugs, and he did not offer to produce the prescriptions; he essentially abandoned that position and stopped volunteering any information at all other than denials. (*Id.*, Ex. A, at 147:1-148:4.) Under these circumstances, it was reasonable for Officer Wojowski to interpret plaintiff's shifting responses as evasive and deceptive, and to conclude that he was being evasive and deceptive because Officer Wojowski had discovered that he was unlawfully in possession of controlled substances;[2] in other words, to conclude that he did not have a valid prescription for the drugs after all.

Plaintiff also argues that the officers did not have probable cause to believe he had been in possession of the drugs because the facts known to them did not sufficiently connect him to the drugs, which Officer Perry found in a public parking lot where they could have been dropped by anyone at any time of the night. Earlier in the evening, prior to the time when he found the drugs, Officer Perry had seen plaintiff standing in the vicinity where he found the drugs, but, plaintiff argues, neither Officer Perry nor Officer Wojowski reported seeing plaintiff make any motion as if he were dropping something to the ground, for example, nor did they observe plaintiff do anything else that might suggest he was in possession of contraband.

But this argument is insufficiently attentive to two facts: (1) Officer Perry found the Chicago Police Department EAP card near the drugs, and the card served as a nexus between the drugs and plaintiff, who had identified himself to the officers as a Chicago police officer, and (2) as plaintiff acknowledged at his deposition, he *admitted* in his interview with Officer Wojowski at the police station that the drugs were his, *see People v. Fox*, 182 N.E.2d 692, 694 (Ill. 1962),

---

[2] Defendants additionally point out that Illinois law prohibits carrying prescription drugs in anything other than their original container, as labeled and dispensed by a pharmacist: "A person to whom . . . any controlled substance has been prescribed or dispensed by a practitioner . . . may lawfully possess such substance only in the container in which it was delivered to him or her by the person dispensing such substance." 720 ILCS 570/312(g). Plaintiff makes no serious response, but neither party cites any case in which anyone was charged under section 312(g), and the Court is reluctant to rely on this statute in this context in the absence of any authority that would support doing so.

8

and then suspiciously attempted to withdraw that admission when he realized that it might be incriminating. Plaintiff attempts to create an issue of fact concerning his stationhouse interview with Officer Wojowski by pointing to inconsistencies in the deposition testimony of the officers (*see, e.g.*, Pl.'s LR 56.1(b)(3)(B) Resp., ¶ 48, ECF No. 42), but any dispute based on the officers' testimony is immaterial because plaintiff himself acknowledged in his own deposition that he initially told Officer Wojowski that the pill container was his. There were sufficient facts tying plaintiff to the drugs to support probable cause based on a theory of constructive possession, even without any evidence of when precisely he dropped them to the ground.

Because the Court has determined that Officers Wojowski and Perry had probable cause to arrest plaintiff, it need not address defendants' alternative argument that they are protected by qualified immunity. But even if the Court assumes that there is a genuine issue of fact as to whether the officers had probable cause to arrest plaintiff, they are protected by qualified immunity.

> "The doctrine of qualified immunity protects government officials from liability for civil damages when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *McAllister v. Price,* 615 F.3d 877, 881 (7th Cir.2010) (citing *Pearson v. Callahan,* 555 U.S. 223 (2009)). . . . "Although the constitutional right to be free from arrest without probable cause [is] well-established," [defendants] are entitled to qualified immunity if "a reasonable officer could have mistakenly believed that probable cause existed." *Humphrey,* 148 F.3d at 725; *see also Hunter v. Bryant,* 502 U.S. 224, 227 (1991) ("Even law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity.") (internal quotation marks omitted).

*London v. Harris*, No. 09 C 7797, 2011 WL 2683158, at *2-3 (N.D. Ill. July 11, 2011) (internal citations altered). Courts sometimes refer to this standard for qualified immunity as "arguable probable cause." *Humphrey*, 148 F.3d at 725. Even if there were some genuine dispute of material fact concerning some issue underlying the officers' decision to arrest plaintiff, a reasonable police officer in defendants' position reasonably *could* have perceived, assuming that

9

Officer Wojowski's stationhouse interview of plaintiff took place as plaintiff described it at his deposition, that plaintiff's contradictory statements during that interview amounted to an admission of guilt.

The Court agrees with defendants that plaintiff misrepresents or outright contradicts his own deposition testimony at times in his brief. He may not create an issue of fact by deviating from his own sworn testimony. *See Amadio v. Ford Motor Co.*, 238 F.3d 919, 926 (7th Cir. 2001); *Roach v. Edwards*, No. 14 C 2198, 2015 WL 5177570, at *5 (N.D. Ill. Sept. 3, 2015); *Butler v. E. Lake Mgmt. Grp., Inc.*, No. 10-CV-6652, 2014 WL 273650, at *2 (N.D. Ill. Jan. 24, 2014).

Additionally, in his response to defendants' Local Rule 56.1 statement, plaintiff purports to dispute various facts by baldly claiming that there is a genuine issue of fact as to, for example, where Officer Perry found the EAP card and the drugs or what exactly transpired during plaintiff's stationhouse interview (*see, e.g.*, Pl.'s LR 56.1(b)(3)(B) Resp., ¶¶ 36, 46, ECF No. 42), but he may not create a genuine issue of fact by making bald denials based on speculation, a hunch, or a "metaphysical doubt," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). He must cite to evidence supporting his position, as summary judgment is the "put up or shut up" moment in a lawsuit, *see Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008). Plaintiff's denials based on no more than an unwillingness to believe the officers are insufficient to create a genuine issue of fact. *See id.* ("[W]hen challenges to witness[es]' credibility are *all* that a plaintiff relies on, and he has shown no independent facts—no proof—to support his claims, summary judgment in favor of the defendant is proper.")

There is no genuine dispute of material fact as to whether there was probable cause to arrest plaintiff, or at least "arguable probable cause" for purposes of qualified immunity. Plaintiff's false arrest claim must fail.

Because plaintiff's false arrest claim must fail, his conspiracy claims must also fail. Plaintiff cannot establish that defendants conspired to violate plaintiff's constitutional rights if he cannot establish that there actually was a clear violation of his constitutional rights. Plaintiff has also made a claim against New Lenox for indemnification of the officers, but this claim too must fail because there is no need for anyone to indemnify defendants for a constitutional violation if plaintiff cannot establish that they violated his constitutional rights.

## **CONCLUSION**

For the reasons set forth above, the Court grants defendants' motion for summary judgment [33]. Civil case terminated.

**SO ORDERED.**                                  **ENTERED:** September 29, 2016

**HON. JORGE L. ALONSO**
**United States District Judge**